J-S92029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: S.L.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.W., NATURAL FATHER | |
| | No. 1082 WDA 2016 |

Appeal from the Decree June 10, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): No. 63 in Adoption 2014

BEFORE:  SHOGAN, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED MARCH 07, 2017**

C.W. ("Father") appeals from the decree entered on June 10, 2016, in the Erie County Court of Common Pleas terminating his parental rights to his minor child, S.L.W. ("Child"), under 23 Pa.C.S.A. § 2511(a)(1), (6), and (b). Counsel filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and a petition to withdraw as counsel.  We grant counsel's petition to withdraw and affirm the decree terminating Father's parental rights.

On January 27, 2016, J.D., the prospective adoptive parent of Child, filed a petition to involuntarily terminate Father's parental rights.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother voluntarily relinquished her parental rights, and, on May 2, 2016, the trial court confirmed this relinquishment and terminated Mother's parental rights.

The trial court found the following facts:

[Child] was born [in] June[,] 2014. J.D. received custody of [Child] on August 27, 2014, after the child's mother indicated she wanted to put [Child] up for adoption. At the time, the child was approximately twelve weeks old. Before giving the child to J.D. the child's natural mother met with J.D., spoke with her on the phone, and allowed J.D. to visit with the child regularly. Around this time, J.D. learned the identity of the child's natural father.

After J.D. took custody of [Child], she maintained regular contact with the natural mother. Despite this contact, the natural mother's knowledge of J.D.'s contact information, and J.D.'s knowledge the natural mother gave birth to another one of [Father's] children, [Father] never contacted J.D. [Father] never filed for custody of the child or paid child support. J.D. never received letters, cards, presents, or phone calls from [Father] asking to speak to the child or otherwise stay involved in the child's [life]. J.D. stated she had no contact with [Father], nor had the child seen [Father] since August, 2014, before the child came into her care.

At one point the natural mother told J.D. [Father] asked about the child. J.D. told the natural mother to give her attorney's contact information to [Father], and to have the [Father] correspond with him. After this, J.D. was aware of only two instances in which [Father] contacted her attorney by telephone. These calls were made prior to October, 2014. [Father] made no other attempt to contact J.D. or her attorney after this time.

Since August of 2014, J.D. testified she tended to all of [Child]'s needs. When J.D. first began caring for [Child], the child had a severe yeast infection on her neck, in her mouth, and in her diaper area. [Child] was also slightly under weight. Once in J.D.'s care, the child gained healthy weight, her yeast infection cleared, and she met all of her developmental milestones.

According to J.D., she and the child were closely bonded. J.D. stated the child calls her "mama" and was also bonded to J.D.'s extended family. Under J.D.'s

tutelage, the child, though just two years old at the time of the hearing, could count to seven, identify parts of her body, and identify animals by sound. J.D. stated she was able to financially support the child, as she had a full time job as a registered nurse.

Despite [Father's] testimony he loved [Child] and was ready, willing, and able to care for her, it was apparent he had no means of doing so, and had done nothing [to] maintain contact with the child or show interest in her life.

At the time of the termination hearing, [Father] was incarcerated on flight charges, pending sentencing. There was also an active [protection from abuse order] against him protecting the child's natural mother, which was extended for a period of one year only two days before the termination hearing. [Father] testified he had nine children ranging in age from seventeen to newborn. The newborn's mother was [Child]'s natural mother.

[Father] acknowledged he spoke with J.D.'s attorney in 2014 regarding J.D.'s potential adoption of [Child]. [Father] knew he needed to obtain counsel, but stated no one would help him. [Father] left his brother's address with J.D.'s attorney, but did not update his address with J.D.'s attorney after he moved in 2015. [Father] stated he wasn't aware he "was supposed to call." [Father] only admitted to receiving paper work at his brother's address via sheriff's service.

[Father] also testified that despite being aware of the process to obtain custody of or visitation with a child, he did not do it because he would need to pay for it. In all of [Father's] other open custody cases, the mothers of his other children filed and paid for all of the paperwork.

When asked why he did not pay child support, [Father] stated he could not afford to because he received disability. [Father] claimed he could not read and write, despite having sent several letters to the attorneys in the case. He claimed his cellmate wrote the letters for him. However, he never sent a letter to J.D.'s attorney. Although [Father] insisted he could not read or write, he testified he was "good with [his] law work," and composed a motion for early release from incarceration, which was

granted. [Father] later insisted he sent presents to the child via the natural mother, but had no proof of this.

Later, [Father] claimed he received disability, and worked full time, but only when he was on work release.

At the close of testimony, a finding was made on the record that J.D.'s testimony was more credible than [Father's].

1925(a) Opinion, 1/11/17, at 3-6 ("1925(a) Op.") (internal citations omitted).

On June 10, 2016, the trial court entered a decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (6), and (b). On July 7, 2016, Father's counsel filed a timely appeal and a statement of intention to file a brief pursuant to **Anders**. On September 27, 2016, counsel filed an **Anders** brief and a petition for leave to withdraw as counsel.[2]

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*).

Before we address the issues raised in the **Anders** brief, we must first determine whether counsel's petition to withdraw satisfies the procedural requirements of **Anders**. To be permitted to withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record,

_____

[2] On January 4, 2017, this Court remanded the case to the trial court for the issuance of a Rule 1925(a) opinion, which the trial court filed on January 11, 2017.

> counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Here, counsel filed a petition for leave to withdraw as counsel, stating that she thoroughly reviewed "all available transcripts, pleadings and other materials from the file." Pet. for Leave to Withdraw, ¶ 1. Counsel notified Father of the withdrawal request, supplied him with copies of the petition for leave to withdraw and the *Anders* brief, and sent Father a letter explaining his right to proceed *pro se* or with new, privately-retained counsel to raise any additional points or arguments that Father believed had merit. **See** Pet. for Leave to Withdraw, ¶ 3; Letter to Father. We conclude that Father's counsel has met the procedural requirements of *Anders*.

We must next determine whether counsel's *Anders* brief meets the requirements established by the Pennsylvania Supreme Court in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361. Further, "[a]fter establishing that the antecedent requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Palm*, 903 A.2d 1244, 1246 (Pa.Super.2006) (quoting *Commonwealth v. Townsend,* 693 A.2d 980, 982 (Pa.Super.1997)).

In the ***Anders*** brief, counsel provides a summary of the facts and procedural history of the case, refers to evidence of record that might arguably support the issues raised on appeal, provides citations to relevant case law, states her conclusion that the appeal is wholly frivolous, and states her reasons for concluding the appeal is frivolous. Accordingly, counsel has complied with the requirements of ***Anders*** and ***Santiago***.

Appellant has not filed a *pro se* brief or a counseled brief with new, privately-retained counsel. We, therefore, review the issues raised in the ***Anders*** brief:

> WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa. C.S.A. §2511(a)(1)?
>
> WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa. C.S.A. §2511(a)(6)?
>
> WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa. C.S.A. §2511(b)?

*Anders* Br. at 3.

When reviewing a trial court's order terminating parental rights, we must accept the trial court's factual findings if they are supported by the record and must "determine if the trial court made an error of law or abused its discretion." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). An abuse of discretion "does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** (internal citations omitted).

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

***Id.*** at 826-27 (internal citation omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

The petitioner has the burden of proving by clear and convincing evidence that the asserted statutory grounds for seeking termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). This Court need only agree with any one subsection of section 2511(a), along with section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

We conclude that the trial court properly terminated Father's parental rights pursuant to sections 2511(a)(1) and (b), which provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

This Court has explained the review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.
>
> . . .
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (citations omitted).

This Court has emphasized that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development

of the child." ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004) (quoting

***In re C.M.S.****,* 832 A.2d 457, 462 (Pa.Super. 2003)).  We have explained:

> A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***Id.*** (internal quotations and citations omitted).

Here, the trial court found:

> [Father's] failure to perform parental duties and his absence from the child's life shows [Father's] settled purpose of relinquishing his parental rights to [Child]. Since August, 2014, when J.D. began caring for the child, [Father] made no credible attempt to maintain contact with the child, send birthday cards, letters, pictures, or gifts. J.D. learned third hand [Father] inquired about [Child], passed along her attorney's information, whom the [Father] called at least twice. Despite this interaction

- 10 -

Father had no contact with J.D. or child, and failed to follow through with the attorney's simple directives to appear at his office to go over paperwork. [Father] admitted he went to the attorney's office at some point but did not go in, stating he thought "[the attorney and him] would have a problem, so [he] avoided that problem."

The trial court rejected much of [Father's] additional testimony as incredible. [Father] claimed he was disabled, unable to work, and unable to read and write, yet later reported he could work as many as twenty hours and claim disability checks, or work full time, but only through the work release program at the county prison. [Father] testified time and time again he paid cellmates or had his brother write documents for him. [Father] asserted he was so "good with his law work" his motion for early release from incarceration was granted. Yet, despite [Father's] self-proclaimed proficiency in the law and available assistance, he never filed for custody, any other relief, or attempted to contact the child.

1925(a) Op. at 7-8 (internal citations omitted). The record supports the trial court's factual findings, and the court did not abuse its discretion in terminating Father's rights under section 2511(a)(1).

We must next review the trial court's conclusion that termination of Father's parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. We have discussed our analysis pursuant to section 2511(b) as follows:

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b)

- 11 -

best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and

citations omitted).

Here, the trial court found:

> An argument termination of [Father's] parental rights was not in the child's best interest is unsupported by the record. At the time the natural mother gave the child to J.D., the child was only three months old. According to both [Father's] and J.D.'s testimony, [Father] had not seen the child since August, 2014. In no way could [Father] be bonded to [Child].
>
> The child continuously lived with J.D. It is clear she and the child are closely bonded. The home provided by J.D. is likely the only home the child remembers or knows. The child calls J.D. "mama" and J.D. has provided for all of the child's medical care, food, clothing, and shelter. Based on J.D.'s demeanor on the witness stand, it is clear she cares deeply for the child and is likewise bonded to her. The child's interests are best served by terminating [Father's] parental rights and allowing her to stay in J.D.'s care.

1925(a) Op. at 8 (internal citations omitted). The record supports the trial

court's factual findings. We conclude that the trial court did not abuse its

discretion in finding termination of Father's parental rights would best serve the developmental, physical, and emotional needs and welfare of Child.

Further, we have conducted a thorough and independent review of the record and have found no non-frivolous issues for appeal.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2017